Christopher J. Reichman  SBN 250485
PRATO & REICHMAN, APC
8555 Aero Drive, Suite 303
San Diego, CA 92123
Telephone: 619-683-7971
Email: chrisr@prato-reichman.com

Attorney for Plaintiff
KENNETH J. MOSER

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENNETH J. MOSER,<br><br>　　　　Plaintiff,<br>　　vs.<br><br>MCAN, LLC d/b/a "BizBloom" a/k/a "bizbloom.com", WE FUND CAPITAL, INC., d/b/a "BizBloom" a/k/a "bizbloom.com", THOMAS COSTA, RAFAEL JASON LEVY a/k/a JASON LEVY, and SINA REZVANI,<br><br>　　　　Defendants. | Case No.: **'18CV0210 CAB BGS**<br><br>**COMPLAINT FOR DAMAGES, INCLUDING PUNITIVE DAMAGES, INTEREST AND ATTORNEY'S FEES, AND FOR INJUNCTIVE RELIEF**<br><br>**Violation(s) of Telephone Consumer Protection Act of 1991**<br>**Trespass to Chattel**<br>**Unfair Business Practices** |

COMES NOW Plaintiff KENNETH J. MOSER (hereinafter referred to as "Plaintiff") who alleges as follows:

## JURISDICTIONAL ALLEGATIONS

1.　Plaintiff is, and at all times herein mentioned was, a resident of the County of San Diego.

- 1 -
Complaint

2. Defendant MCAN, LLC d/b/a "BizBloom" a/k/a "bizbloom.com" (referred to as 'BizBloom' herein for convenience) is, and at all times herein mentioned was, a New York Limited Liability Company doing business in the San Diego, California.

3. Defendant WE FUND CAPITAL, INC., d/b/a "BizBloom" a/k/a "bizbloom.com" is, and at all times herein mentioned was, a California Corporation doing business in the San Diego, California.

4. Defendant THOMAS COSTA is, and at all times herein mentioned was, a resident of New York and doing business in San Diego, State of California.

5. Defendant RAFAEL JASON LEVY a/k/a JASON LEVY is, and at all times herein mentioned was, a resident of New York and doing business in the San Diego, California.

6. Defendant SINA REZVANI is, and at all times herein mentioned was, a resident of California and doing business in San Diego, State of California. (All defendants together will be collectively referred to as "Defendants".)

7. This case is filed pursuant to the Telephone Consumer Protection Act of 1991, 47 U.S.C. §227 et. seq. ("TCPA"). The U.S. Supreme Court recently decided that federals courts have federal question subject matter jurisdiction over such civil actions under 28 U.S.C. §§ 1331 and 1441. *Mims v. Arrow Fin. Services, LLC*, -- U.S. --, 132 S.Ct. 740, 753 (2012). The state law claim herein arises out of a common nucleus of operative facts and is subject to supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

8. The Ninth Circuit Court of Appeals recently ruled that TCPA cases have federal standing by their very nature. *Van Patten v. Vertical Fitness Group*, LLC, 847 F.3d 1037, 1043 (9th Cir. 2017) ("Unsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients.").

9. At all times herein mentioned each defendant was the partner, agent

Complaint

and employee of each co-defendant herein and was at all times acting within the scope of such partnership, agency and employment and each defendant ratified the conduct of each co-defendant herein.

## FACTUAL SUMMARY

10. Defendants transmitted thirty (30) total calls plus one (1) text message call to KENNETH J. MOSER, which are detailed below.

11. Defendants made twenty seven (27) calls to KENNTH J. MOSER's cellular telephone number 858-627-4190 using an automatic dialer on the following dates and times and using the following remote Caller ID ("CID") numbers and Caller ID name ("CNAM"):

| Type | # | Local Number | Remote Number | Caller-ID Name | Date/Time |
|---|---|---|---|---|---|
| Missed | 1 | (858) 627-4190 | (516) 394-6189 | Garden City NY | 6/6/2016 8:08 |
| Missed | 2 | (858) 627-4190 | (516) 394-6189 | Garden City NY | 6/3/2016 13:33 |
| Inbound | 3 | (858) 627-4190 | (516) 394-6189 | Garden City NY | 6/3/2016 9:29 |
| Missed | 4 | (858) 627-4190 | (516) 394-6189 | Garden City NY | 6/3/2016 8:11 |
| Inbound | 5 | (858) 627-4190 | (516) 394-6189 | Garden City NY | 6/2/2016 14:03 |
| Inbound | 6 | (858) 627-4190 | (516) 394-6189 | Garden City NY | 6/2/2016 12:31 |
| Inbound | 7 | (858) 627-4190 | (516) 394-6189 | Garden City NY | 6/2/2016 9:55 |
| Inbound | 8 | (858) 627-4190 | (516) 394-6189 | Garden City NY | 6/2/2016 8:10 |
| Inbound | 9 | (858) 627-4190 | (516) 394-6189 | Garden City NY | 6/1/2016 12:06 |
| Inbound | 10 | (858) 627-4190 | (516) 394-6189 | Garden City NY | 6/1/2016 9:55 |
| Missed | 11 | (858) 627-4190 | (516) 394-6189 | Garden City NY | 6/1/2016 8:19 |
| Inbound | 12 | (858) 627-4190 | (516) 394-6189 | Garden City NY | 5/31/2016 13:51 |
| Inbound | 13 | (858) 627-4190 | (516) 394-6189 | Garden City NY | 5/31/2016 9:47 |
| Inbound | 14 | (858) 627-4190 | (516) 394-6189 | Garden City NY | 5/31/2016 8:11 |
| Inbound | 15 | (858) 627-4190 | (516) 394-6189 | Garden City NY | 5/18/2016 14:13 |
| Missed | 16 | (858) 627-4190 | (516) 394-6189 | Garden City NY | 5/18/2016 9:58 |
| Inbound | 17 | (858) 627-4190 | (516) 394-6189 | Garden City NY | 5/18/2016 8:18 |
| Inbound | 18 | (858) 627-4190 | (516) 394-6189 | Garden City NY | 5/17/2016 11:07 |
| Inbound | 19 | (858) 627-4190 | (516) 394-6189 | Garden City NY | 5/17/2016 8:18 |
| Inbound | 20 | (858) 627-4190 | (516) 394-6189 | Garden City NY | 5/16/2016 12:22 |
| Inbound | 21 | (858) 627-4190 | (516) 394-6189 | Garden City NY | 5/16/2016 8:27 |
| Inbound | 22 | (858) 627-4190 | (516) 394-6189 | Garden City NY | 5/13/2016 11:24 |
| Missed | 23 | (858) 627-4190 | (516) 394-6189 | Garden City NY | 5/13/2016 8:17 |
| Missed | 24 | (858) 627-4190 | (516) 394-6189 | Garden City NY | 5/12/2016 12:42 |
| Inbound | 25 | (858) 627-4190 | (516) 394-6189 | Garden City NY | 5/12/2016 8:26 |
| Inbound | 26 | (858) 627-4190 | (516) 394-6189 | Garden City NY | 5/11/2016 12:59 |
| Inbound | 27 | (858) 627-4190 | (516) 394-6189 | Garden City NY | 5/11/2016 8:16 |

12. Defendants made one (1) additional call to KENNTH J. MOSER's cellular telephone number 858-414-6170 using an automatic dialer on July 5, 2016 using the CID 508-203-4038 and CNAM "Garden City, NY".

13. Defendants made one (1) additional call to KENNTH J. MOSER's cellular telephone number 858-627-4190 using an automatic dialer on July 6, 2016 using the CID 516-525-6005 and CNAM "Garden City, NY".

14. Defendants made one (1) additional call to KENNTH J. MOSER's cellular telephone number 858-414-6170 using an automatic dialer on September 12, 2016 using the CID 501-318-1001 and CNAM "Garden City, NY".

15. Finally, Defendants transmitted one (1) text message call to KENNETH J. MOSER's cellular telephone number 858-627-4190 using an automatic dialer on January 19, 2017 which used CID 516-524-4797 but transmitted no CNAM information:



- 4 -

Complaint

*See*, *Satterfield v. Simon & Schuster*, 569 F.3d 946 (9th Cir., 2009) (text messages are autodialed calls to cell phones under TCPA)

16. While each of the calls complained of above transmitted a proper Caller ID number, they did not give the true and accurate name of the person or entity calling in the Caller ID name information as required by law. 47 C.F.R. § 64.1601(e).

17. All of the calls had to be autodialed since they all used prerecorded messages and were not made by live humans.

18. If Mr. Moser did not answer the call—and sometimes even if he did—the autodialer would have a long pause of up to eight seconds before a prerecorded message would simply say "Goodbye" and hang up, and Mr. Moser has a number of voicemails showing this pattern for the unanswered calls.

19. Mr. Moser did answer a number of the calls including the calls on June 6, 2016, July 5, 2016, July 6, 2016 and September 12, 2016.

20. A prerecorded message was used at the outset of every call Mr. Moser answered, whether it was (mistakenly) the "Goodbye" message used in the unanswered calls, or a prerecorded automated and autodialed sales pitch as detailed below.

21. The autodialing machine or software places calls and plays prerecorded messages, but does not bring the caller's sales representative onto the line unless and until the called party answers the phone and presses a button, for example "press 1 if you are interested", before the autodialer brings a live sales representative onto the line.

22. The call on June 6, 2016 was one of the 27 calls that all used the same CID number, (516) 394-6189.

23. The call played a prerecorded message touting business loans and said you could "press 1 if you are interested".

24. Since the message did not identify the caller and Mr. Moser was sick and tired of getting these junk calls, he pressed 1 to find out who was calling him, and Defendants' call representative came on the line and self-identified as "Mark with BizBloom".

25. Mr. Moser has received thousands of junk telemarketing calls and prosecuted his rights in numerous telemarketing cases and knows that sales representatives sometimes use false names at the outset of calls to avoid identification so he played along further just to assure the identity of the caller, and the sales representative offered to send him an e-mail about the financing service, so Mr. Moser gave him permission to send the e-mail but definitely did not give him permission to make any more calls.

26. Immediately after the June 6, 2016 call, Defendants' sales representative sent an e-mail to Mr. Moser an e-mail which indicated it was from "Marc Rybacki" at "mrybacki@bizbloom.com".

27. The e-mail had a BizBloom logo and picture in the e-mail body where the introduction also read "Welcome to BizBloom", and had an attachment labeled "BizBloom Application (2).pdf".

28. Mr. Moser found that the website "bizbloom.com" was and is registered to Thomas Costa, co-owner of Bizbloom, by using the commonly available identification service "WhoIs" which shows InterNIC website registration.

29. For any calls from CID (516) 394-6189 which Mr. Moser did not answer, Plaintiff pleads on information and belief that the calls he did not answer where made by Defendants using an autodialer in the exact same way as all of the calls he did answer, which all used the same CID (516) 394-6189.

30. The call on July 5, 2016 used a new CID number, 508-203-4038, but played a similar prerecorded message saying "The funding source" had business financing available and asked to "press 1" if interested.

31. Since this call was from a new CID number and therefore could possibly have been from someone else, Mr. Moser pressed the button to find out who the caller was.

32. After pressing the button, a live sales representative came on the line and self-identified as "Marvin Glasgold of BizBloom".

33. Once again Mr. Moser played along to confirm the identity of the caller and agreed to a follow up e-mail, but did not agree to any follow up calls.

34. Immediately after this July 5, 2016 call, Defendants' sales representative sent an e-mail to Mr. Moser an e-mail which indicated it was from "Marvin Glasgold" at "mglasgold@bizbloom.com".

35. The e-mail had the same BizBloom logo and picture in the e-mail body where the introduction also read "Welcome to BizBloom", and had an attachment labeled "BizBloom Application (2).pdf".

36. The call on July 6, 2016 used a new CID number 516-525-6005, so Mr. Moser answered, but the autodialer must not have registered his answering the call since it did the exact same thing it had done for prior unanswered calls by giving a long pause before playing a prerecorded voice that just said "Goodbye" then hung up.

37. This pattern of long pause then prerecorded "Goodbye" is unique to the calls alleged in this case and Mr. Moser has never heard it in any of the thousands of other prerecorded calls he has received and he therefore alleges on information and belief the call was made by Defendants using an autodialer in the exact same way as all of the other calls he did not answer that used this unique pause and then "Goodbye" pattern.

38. The call on September 12, 2016 used a new CID number 501-318-1001, so Mr. Moser answered and a prerecording about business funding with a "press 1" if interested prompt played and Mr. Moser pressed 1 to find out whop was behind this call from a new CID number.

39. A live sales representative came on the line who said rather vaguely or cryptically that he was "from the Business Loan Center in Florida" and began asking loan qualification questions.

40. Since the representative only identified the calling party very vaguely, Mr. Moser played along to see if more information would be forthcoming.

41. After a few qualifying questions, this first live representative said he would bring his agent on the line and another person came on the line who self-identified as "Jason Ahbanec with Bizbloom".

42. Once again Mr. Moser played along to completely confirm the identity of the caller and agreed to a follow up e-mail, but did not agree to any follow up calls.

43. Immediately after this September 12, 2016 call, Defendants' sales representative sent an e-mail to Mr. Moser an e-mail which indicated it was from "Jason Ahbanec" at "jahbanec@bizbloom.com".

44. The e-mail had the same BizBloom logo and picture in the e-mail body where the introduction also read "Welcome to BizBloom", and had an attachment labeled "BizBloom Application (2).pdf".

45. Thus Mr. Moser answered calls from each of the four CID numbers used and either positively identified the caller as Bizbloom by the self-identification of the sales representative who came on after the prerecorded message and their follow up e-mail, or identified the caller because the prerecorded call used the pause and prerecorded "Goodbye" pattern unique to this caller when the automated system thought the call was not answered.

Liability of MCAN, LLC d/b/a "BizBloom" a/k/a "bizbloom.com"

46. As detailed above, during each call Mr. Moser answered Defendants' call representative self-identified as being "with BizBloom".

47. After the calls on June 6, 2016, July 5, 2016 and September 12, 2016, Defendants sent Mr. Moser e-mail which identified the caller who sent the follow up e-mail as being with BizBloom.

48. These e-mails used "@bizbloom.com" sender e-mail addresses, and as detailed above InterNIC website registration shows that "bizbloom.com" is registered to Thomas Costa, co-owner of Bizbloom.

49. The Better Business Bureau lists MCAN, LLC as an alternative name for BizBloom in its BizBloom listing. (https://www.bbb.org/new-york-city/business-reviews/small-business-loans/biz-bloom-in-plainview-ny-157058).

50. MCAN, LLC is co-owned by Jason Rafael Levy and Thomas Costa, who is the listed registrant for "bizbloom.com".

51. In a PRNewswire.com announcement authored by BizBloom itself, Mr. Costa and Mr. Levy touted their ownership and control over BizBloom: https://www.prnewswire.com/news-releases/bizbloom-celebrates-first-year-success-300162788.html.

52. MCAN, LLC is the only company that lists Mr. Levy and Mr. Costa together as co-owners and is therefore the only company that could comport with the press release Bizbloom itself put out.

53. Plaintiff alleges on information and belief for the foregoing reasons that MCAN, LLC does business as "BizBloom" whether it be as a registered fictitious business name in one of the thousands of counties in the United States or as an unlicensed fictitious business name.

### Liability of Thomas Costa & Jason

54. Defendants Thomas Costa and Rafael Jason Levy are, and at all times herein mentioned were, the two co-owners of Defendant MCAN, LLC d/b/a "BizBloom" a/k/a "bizbloom.com".

55. Mr. Costa and Mr. Levy are the only listed officers, board members, or brokers for Defendant MCAN, LLC d/b/a "BizBloom" a/k/a "bizbloom.com" in any public documents filed with the State of California or the State of New York.

56. In a PRNewswire.com announcement authored by BizBloom itself, Mr. Costa and Mr. Levy touted their ownership and control over BizBloom: https://www.prnewswire.com/news-releases/bizbloom-celebrates-first-year-success-300162788.html.

57. Plaintiff has searched public records such as federal employer Identification Number registries and can find no record that Bizbloom ever employed anyone in a managerial capacity, nor any evidence that anyone other than Mr. Costa and Mr. Levy ever held any managerial role at the company.

58. Since no other person with BizBloom is listed anywhere as having a managerial role, Plaintiff alleges on information and belief that Defendants Mr. Costa and Mr. Levy jointly and/or separately made the violative calls using false names, ordered BizBloom employees or agents to make the violative calls, knew the violative calls were being made and did nothing, or were willfully and recklessly ignorant of the fact their company was making the calls described above.

## Liability of Sina Rezvani

59. Mr. Rezvani has filed a host of business financing corporations with himself as sole owner, and two of them— Business Bud, LLC and Khamsa Holdings, LLC—list 1936 E. Deere Ave, Suite 110 Santa Ana, California as their address.

60. Although "BizBloom" is not a lawfully registered fictitious business name in San Diego where the calls were received nor in New York where MCAN, LLC is headquartered, BizBloom claims to have offices at 1936 E. Deere Ave,

Complaint

Suite 110 Santa Ana, California on Yelp and in other listings and press releases. (See, e.g., https://www.yelp.com/biz/bizbloom-santa-ana).

61. The website for the Orange County Recorder's office does list "BizBloom" as a fictitious business name registered to We Fund Capital, Inc., which is owned by Sina Rezvani.

62. We Fund Capital, Inc., is also listed as the owner of ficitious business name "ASAP Funder" and the website for it, "asapfunder.com", uses the exact same address as BizBloom's supposed California office, 1936 E. Deere Ave, Santa Ana, California. (See, http://www.asapfunder.com/contact.html, see also, https://web.archive.org/web/20170330105609/http://www.asapfunder.com/contact.html).

63. Plaintiff alleges on information and belief that Sina Rezvani directs his wholly owned company We Fund Capital, Inc., to act as BizBloom's alleged California office including in the ordering, procuring, and transmission of telemarketing calls including those complained of herein.

64. Plaintiff alleges on information and belief that Defendant Sina Rezvani made the violative calls, ordered them made, knew the calls described above were being made and did nothing, or was willfully and recklessly ignorant of the fact his company was making the calls described above.

## Actual Harm & Willful and Knowing Conduct

65. Mr. Moser has been harmed by the junk calls complained of herein by the direct waste of his time during the calls themselves, the indirect waste of time in having to break from other important tasks and spend time catching up after these junk calls, the waste of telephone service which he and not Defendants must pay for, the costs of having to pursue legal remedies, and in the aggravation and consequent health effects of stress these illegal intrusions have caused.

66. Mr. Moser has been harmed by the calls he did not answer by the direct waste of his time in having to check the Caller ID while he was busy in meetings or with other projects before declining the call, the indirect waste of time in having to break from other important tasks and spend time catching up after these junk calls, the waste of telephone service which he and not Defendants must pay for, the costs of having to pursue legal remedies, and in the aggravation and consequent health effects of stress these illegal intrusions have caused.

67. During each of Defendants' calls, Plaintiff wanted to make or receive a call to/from someone else for his own personal or business reasons and was blocked from doing so by the line being tied up by Defendants.

68. As a proximate result of these intrusions, Plaintiff suffered damage in an amount according to proof, but no less than 10% of his monthly phone bills in May of 2016 and June of 2016 since Defendants calls constituted 10% or more of the total calls to his phone during the heights of their junk calling campaign in those two months.

69. Plaintiff alleges on information and belief that Defendants made the calls described above intentionally, in the sense that the number called was the one they meant to call in pitching their services.

70. Plaintiff alleges on information and belief that Defendants made the calls described above knowingly that they were made in contravention of the TCPA and other telemarketing laws and regulations

**FIRST CAUSE OF ACTION**

[TCPA – Autodialed Calls To Cell Phone – For All 31 Calls]

71. Plaintiff realleges all paragraphs above and incorporates them herein by reference.

72. Plaintiff is bringing this action pursuant to the provisions of the

Telephone Consumer Protection Act of 1991 (47 U.S.C. §227 and 47 C.F.R. §64.1200 – "TCPA").

73. Subdivision (b) (1) (A) (iii) of Section 227 of Title 47 of the United States Code makes it unlawful for any person to "Make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice...to any telephone number assigned to a paging service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call."

74. Defendants have called Plaintiff's number assigned to a radio common carrier service—commonly called cell phone service—using an automatic telephone dialing system or an artificial or prerecorded voice during the statutory period of the last 4 years, pursuant to 28 U.S.C. § 1658.  These calls are only the calls known to Plaintiff at this time and Plaintiff states on information and belief, without yet having the aid of full discovery, that it is quite likely that Defendant has made many more violative calls to Plaintiff's cell phone.  These calls were not made for any emergency purpose, nor were these calls exempt under subdivision (c) of section 64.1200 of title 47 of the Code of Federal Regulations.

75. Subdivision (b)(3) of section 227 of title 47 of the United States Code permits a private right of action in state court for violations of "this subsection", including 47 U.S.C. §227 (b) (1) (A) (iii).  Plaintiff may recover $500.00 for each violation, or both.  If the court finds that defendants' violations were willful or knowing, it may, in its discretion, award up to three times that amount

WHEREFORE Plaintiff prays for judgment against defendants, and each of them, as follows:

On the FIRST CAUSE OF ACTION:

1. For an award of $500.00 for each violation of 47 U.S.C. § 227 (b);
2. For an award of $1,500.00 for each such violation found to have been willful;

On ALL CAUSES OF ACTION:

3. For attorney's fees pursuant to California Code of Civil Procedure § 1021.5.
4. For costs of suit herein incurred; and
5. For such further relief as the Court deems proper.

DATED: January 26, 2018                    **PRATO & REICHMAN, APC**

/s/Christopher J. Reichman, Esq.
By: Christopher J. Reichman, Esq.
**Prato & Reichman, APC**
Attorneys for Plaintiff
KENNETH J. MOSER